UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Civil Action No.: 7:24-cv-00009

| | |
|---|---|
| KAITLIN MESSER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> STARBUCKS CORPORATION d/b/a ) <br> STARBUCKS COFFEE COMPANY ) <br> ) <br> Defendant. ) <br> ) | COMPLAINT and JURY TRIAL DEMAND |

Plaintiff, Kaitlin Messer ("Plaintiff" or "Messer"), by and through counsel, brings this action for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, as amended, *et seq*. against Starbucks Corporation d/b/a Starbucks Coffee Company ("Starbucks").

## NATURE OF PLAINTIFF'S CLAIMS

1. Plaintiff, an eleven-year employee of Starbucks, transferred to Wilmington, North Carolina to become the Store Manager at the 1406 Barclay Pointe Blvd location. Upon her arrival, Plaintiff's District Manager, Dave Schuberth ("Schuberth") immediately began harassing Plaintiff with overtly sexual comments, which led to non-consensual touching of Plaintiff. Plaintiff reported Schuberth's inappropriate comments and touching to Starbucks' Human Resources department and filed an ethics and compliance complaint. In response, Schuberth initiated a fictious investigation into Plaintiff's time keeping in an effort to terminate Plaintiff's employment, ultimately leading to a fabricated final written warning. As a result of Defendant's unlawful conduct, Plaintiff brings claims pursuant to Title VII.

## THE PARTIES

2. Kaitlin Messer is an adult individual who resides in San Diego, California.

3. Starbucks is organized under the laws of Washington with its headquarters located at 2401 Utah Avenue, South, Seattle, Washington, 98134.

4. At all relevant times, Starbucks maintained locations throughout the state of North Carolina, including the store that is the subject of this lawsuit, which is located at 1406 Barclay Pointe Blvd., Wilmington, North Carolina.

## COVERAGE ALLEGATIONS

5. Starbucks is an employer within the meaning of 42 U.S.C. § 2000e(b).

6. At all relevant times, Plaintiff was an "employee" covered by the protections of Title VII within the meaning of 42 U.S.C. § 2000e(f).

7. Plaintiff satisfied her obligation to exhaust her administrative remedies by timely filing a Charge of Discrimination against Respondent with the United States Equal Employment Opportunity Commission ("EEOC") alleging discrimination and retaliation under Title VII. Plaintiff received her Notice of Right to Sue from the EEOC on October 11, 2023, and timely brings this Complaint within ninety (90) days of her receipt thereof.

## PLAINTIFF'S FACTUAL ALLEGATIONS

8. Starbucks is a retail coffee company with hundreds of locations across the United States, including North Carolina.

9. Messer began her employment with Starbucks as a Store Manager in Training in or about January 2012. In or about March 2012, Messer became a Store Manager. Messer still holds the role of Store Manager with Starbucks.

10. At all relevant times, Messer regularly met or exceeded Starbucks' legitimate employment expectations as evidenced by positive performance reviews and no disciplinary

actions, except for the disputed final written warning that is the subject of Messer's retaliation claim.

11. On or about July 5, 2021, Messer transferred to the Wilmington, North Carolina store located at 1406 Barclay Pointe Blvd. (the "Pointe Store"), and worked under the supervision of Schuberth, Starbucks' District Manager for Wilmington, North Carolina.

12. On Messer's first day of work, Schuberth introduced himself and stated, "We're going to get to know each other really well. I want it to be like we are dating; like I'm having an emotional affair on my wife." Schuberth's comments bothered Messer and she walked away from the conversation. Another female manager followed her and asked if she was "okay." Messer told the female manager that Schuberth's comments bothered her. The female manager attempted to console Messer, but told her "don't bother [making a complaint], nothing ever happens to him."

13. Over the course of the first six to eight weeks of Messer's employment, she worked in the back office. Messer's desk faced a wall and there was a door directly behind her desk. On various occasions, Schuberth snuck up behind Messer and put his arms around her shoulders in a hugging motion and stated "Hi, friend." After the second incident of unwanted touching, Messer moved her work space to the café so Schuberth could not sneak up behind her. However, Messer would work in the back-office area only if other employees were with her.

14. Beginning in August 2021, Schuberth set up weekly in-person meetings with Messer. Schuberth told Messer the purpose of the meetings was "not for business," but rather, "so I can get to know you better." Upon information and belief, Schuberth did not set up weekly meetings with any other employee to get to know them better. During the meetings, Schuberth required Messer to leave work so that he could talk to her about his marriage, ask questions about Messer's personal life, and made attempts "to get to know [Messer]."

3

Case 7:24-cv-00009-BO-RN    Document 1    Filed 01/09/24    Page 3 of 14

15. In or about October 2021, Schuberth attended a meeting at the Pointe Store. Schuberth sat next to Messer during the meeting. At the end of the meeting, Schuberth put his hand on Messer's thigh and attempted to put his head on her chest. Messer stood up and walked away. Other female employees witnessed Schuberth inappropriately touch Messer.

16. After Messer rejected Schuberth's sexual advances, as described above in Paragraph 15, Schuberth's interactions with Messer changed dramatically. Schuberth began telling Messer he "is a vengeful person." For example, he told Messer that he paid a company to repeatedly and anonymously mail excrement to a former employer he did not like. Schuberth admitted to mailing excrement to this former employee for over two years. Schuberth additionally told Messer he reviews a chart describing "how to manipulate other people" before going into each store so he can "get what he wants from any employee." Schuberth then showed Messer the chart he referenced. Thereafter, Schuberth instructed Messer to walk outside with him. Fearful of losing her job, Messer complied. Schuberth then told Messer that he did not have "the relationship [he] want[ed] to have with [her]."

17. In or about December 2021, Messer and Schuberth were tasked with investigating an ethics and compliance complaint filed by other employees of the Pointe Store. Messer telephoned Schuberth to discuss the complaint. During the call, Schuberth told Messer that one of the employees also filed an ethics and compliance complaint against Schuberth. Schuberth then told Messer "you're never going to believe this complaint, we have to fire [the employee who filed the complaint]." Schuberth also told Messer that he could be fired for telling her about the ethics complaint against him and then demanded that she not tell anyone else about it.

18. Messer then conducted an investigation into the employee's complaint. Due to Starbucks' policy, Schuberth avoided Messer's store until the investigation into the employee's complaint against Schuberth concluded.

19. During the investigation, Messer experienced a flare up of Post Traumatic Stress Disorder ("PTSD"). Messer told Schuberth she could no longer work on the investigation and that she needed help completing it. Schuberth told her that he could not be involved with the investigation because any involvement would give the impression of retaliation. Messer told Schuberth she needed to request an accommodation under the Americans with Disabilities Act of 1990 and requested to be removed from the investigation. Schuberth then told Messer he would help with the investigation to avoid Messer needing to request an accommodation.

20. In or about February 2022, Messer began applying for other Store Manager positions throughout the United States, including Santa Monica, California.

21. On or about March 23, 2022, Schuberth texted Messer "So Santa Monica, CA ........." "Yeah they reached out to me already, I told them all bad things so u can't leave." A few seconds later Schuberth texted again "Just kidding I gave u a great reference."

22. Starbucks' investigation concluded on or about March 31, 2022, resulting in the complaining employee's termination. After that employee's termination, Schuberth told Messer to take a couple of mental health days to recover from the investigation. Immediately, thereafter, Schuberth began a campaign to terminate Messer's employment.

23. From April 1 through April 3, 2022, Messer went to California. On April 3, 2022, Messer's flight was cancelled and she could not return to Wilmington until April 5, 2022. Messer notified Schuberth of her flight's cancellation and requested to work remotely on April 4, 2022. Schuberth responded, "I don't think that would be a good idea." Messer telephoned Schuberth but

he did not answer. Messer then texted Schuberth asking if he would like her to take a vacation day instead of working remotely. In her messages, Messer stressed the urgency of the situation and needed a response from Schuberth because payroll was due and only Messer and Schuberth had access to the store's payroll. Schuberth did not respond to any of the phone calls or texts and deliberately avoided Messer. However, on other occasions, and specifically on April 4, 2022, Schuberth permitted other similarly situated Store Managers to work remotely.

24. On April 8, 2022, Schuberth told Messer there would be a meeting at her store later in the day. However, Schuberth never held the meeting. Instead, Schuberth asked Messer to go outside with him to have a conversation. During the conversation, Schuberth interrogated Messer about her use of "mental health days," asking Messer "if you can't work [because of your mental health issues], then how can you get on a plane? How can you get out of bed?" Schuberth then stated, "you're dating a new guy out in California, right? That's why you went out to California to see the new guy you're dating." Schuberth questioned Messer about each of Messer's absences since she transferred to Wilmington and asked whether or not Messer had a mental health day on the various absences. Schuberth then told Messer that "PTSD is absurd." Schuberth instructed Messer to write an email summarizing the conversation. While Messer attempted to write a statement summarizing the conversation, Schuberth repeatedly interrupted her and ultimately forced her to send an incomplete statement to him.

25. After Schuberth left, Messer telephoned Starbucks' Human Resources department and requested assistance with filing an ethics and compliance complaint against Schuberth. Messer provided the details contained in Paragraph 24 above to the Human Resources representative she spoke with. Starbucks' Human Resources representative told Messer to provide her contact information and that Messer would receive a call back with more information.

26. On or about April 9, 2022, Starbuck's Human Resources representative telephoned Messer. The representative stated that she would file an ethics and compliance complaint on Messer's behalf. The representative also told Messer not to speak with Schuberth or any other District Manager or Regional Manager about anything relating to Schuberth. The representative also told Messer an ethics and compliance representative would contact her.

27. On or about April 10, 2022, Messer filed an ethics and compliance complaint against Schuberth via Starbucks' online complaint system. The complaint described Schuberth's inappropriate behavior as described above in Paragraphs 12–24. The complaint also described other instances where Messer witnessed Schuberth inappropriately touch or otherwise behave inappropriately toward other female employees.

28. On or about April 12, 2022, Messer had a virtual interview for the Santa Monica, California position with two District Managers. On or about April 14, 2022, Starbucks' recruiter for California contacted Messer regarding the position in Santa Monica. The recruiter said Messer could start working April 15, 2022, and that Kyle Ray ("Ray"), Starbucks' Regional Manager for the Coastal Carolina region, and Schuberth released Messer to transfer to Santa Monica. Messer told the recruiter she needed to think about the offer and would respond following her interview for a Store Manager position in San Diego, which was scheduled for April 19, 2022.

29. Pursuant to Starbucks' policies, Ray and Schuberth could not have released Messer to transfer to a new store location if she had any disciplinary actions or pending investigations. However, as of April 12, 2022, both managers released Messer to be eligible for a transfer.

30. On or about April 19, 2022, Messer interviewed for the Store Manager position at one of Starbucks' locations in San Diego, California. On or about April 20, 2022, Messer

7

Case 7:24-cv-00009-BO-RN   Document 1   Filed 01/09/24   Page 7 of 14

telephoned Starbucks' recruiter and requested more time to decide on the Santa Monica position because Messer was waiting to hear from the San Diego location.

31. On or about April 21, 2022, Starbucks' San Diego recruiter telephoned Messer. The recruiter told Messer she would not receive an offer for the San Diego location. Messer asked her why and the recruiter responded, "you need to speak with your District Manager to get more information."

32. On or about April 22, 2022, Messer was filling cold brew kegs at Starbucks' Wilmington location. Schuberth snuck up on Messer, leaned over her, and stated "Hi, friend. Did I scare you?" Schuberth then laughed at Messer. As Messer stood up, Schuberth moved to where he trapped Messer against the cold brew kegs and was chest-to-chest with Messer. Messer escaped the situation by knocking over a cold brew keg and walked outside.

33. Messer immediately texted Ray: "Honestly Kyle, I am being subjected to abuse, harassment, and mental abuse because I have failed to respond to Dave's advances. This needs to stop now. It's threatening my welfare and that of Starbucks."

34. Ray telephoned Messer a few hours later on April 22, 2022. Messer told Ray about the incident described above in Paragraph 32, as well as reiterating Schuberth's other inappropriate comments and touching. Ray told Messer he did not know about Schuberth's inappropriate conduct. However, Messer previously sent emails, texts, and voicemails to Ray about her concerns but Ray ignored all of them. During the phone call, Ray asked if Messer filed an ethics and compliance complaint, to which Messer responded affirmatively. Ray then asked if the ethics and compliance investigator contacted her, to which Messer responded negatively. Ray told Messer he would contact the investigator and have that person contact Messer. Ray then asked Messer what she wanted to happen. Messer responded, "I want Dave to stop coming into the store and

touching me." Ray did not acknowledge Messer's request but did tell her that he "took [her] complaint seriously" and told her "if the investigator does not contact you in 15 minutes, to let [him] know." Then the conversation ended.

35. Within fifteen (15) minutes, an ethics and compliance investigator telephoned Messer. The investigator told Messer he spoke with Ray, who described the recent incident, and he also had Messer's complaint that she filed on April 10, 2022. The investigator told Messer he had "everything he needed" and would begin investigating Messer's complaint. The investigator additionally told Messer she would report to a new District Manager during the investigation and instructed her not to have any contact with Schuberth.

36. Because Messer could not interact with Schuberth, Messer was excluded from team messages, team celebrations, and meetings, which adversely affected her work performance. Additionally, Messer's work schedule changed because she had to report to a District Manager who oversaw stores two hours away and her workload greatly increased, exceeding that of similarly situated Store Managers.

37. Even though Schuberth was instructed not to contact Messer during the investigation, he continued to email her.

38. On or about May 5, 2022, Messer accepted the Santa Monica position. Messer's last day of work at the Pointe Store was June 5, 2022.

39. Messer utilized FMLA leave to care for her father from June 6, 2022 until July 10, 2022. Due to her protected FMLA leave, Messer was not scheduled to start work in Santa Monica until July 10, 2022.

40. On or about June 16, 2022, Schuberth held a meeting at the Pointe Store. Schuberth showed all of the employees at the Pointe Store Messer's ethics and compliance complaint, called

9

Messer "a liar and a gas-lighter," and showed the other employee's confidential notes he took during each of Messer's performance evaluations. Some of Messer's former co-workers defended Messer and told Schuberth his conduct was inappropriate. Schuberth disciplined the co-workers who defended Messer.

41. On or about June 23, 2022, Amanda Obusan ("Obusan"), Starbucks' Human Resources Business Partner, emailed Messer regarding an investigation Schuberth initiated on April 6, 2022 relating to "manipulation of your time work, among other misconduct." Messer did not initially respond because she was utilizing protected FMLA leave. Obusan continued to contact Messer, despite being on protected FMLA leave, via telephone calls, text messages, and emails multiple times per day, including texting Messer on Saturday June 25, 2022, stating: "Hi Kait, thanks for giving me a call. Are you available Monday to talk?" Messer replied,

> Hi, seems you are working today. I did call, your e-mail had a lot of information that was confusing. And it's really stressed me out. I prefer to talk today, its best for me. I'm not sure my schedule Monday. I am on leave to support my Dad he had a doctors appointment Monday.

On Monday June 27, 2022, Obusan texted Messer, "Good Morning Kait. I hope your father is doing well and am happy to flex as needed around his needs. Let me know when you're available and we can find some time to connect."

42. On June 25, 2022, the ethics and compliance investigator emailed Messer stating that her complaint was unsubstantiated and the complaint was closed.

43. From April 22, 2022 through June 25, 2022, the ethics and compliance investigator failed to contact Messer or collect any information from her regarding her complaint. Upon completion of the investigation, Messer learned the investigator erroneously contacted three other employees of Starbucks with similar names; however, their names are spelled differently. Thus, the investigator closed Messer's complaint without contacting her.

44. On June 28, 2022, despite still being out of work on protected FMLA leave, Messer responded to Obusan's email because Messer still had not received a start date for the Santa Monica position. Messer also provided her availability for a meeting to discuss the investigation. Obusan never responded.

45. At about 10:00 p.m. on or about July 10, 2022, Messer received her schedule which showed that her first shift in Santa Monica was to be on July 11, 2022. Starbucks provided Messer with less than 12 hours' notice of first shift, violating its own policies. According to Starbucks' policy, employees are supposed to receive at least three weeks' notice of their scheduled shift. Approximately 15 minutes before her first shift, Messer's new District Manager canceled her start day via text message and moved her start date to July 12, 2022. Messer telephoned her new District Manager regarding the change in schedule but her District Manager did not answer. Messer then texted her District Manager and she immediately replied.

46. On July 12, 2022, Messer received a final written warning from Ray. Ray failed to follow Starbucks' progressive discipline policy in providing Messer with the final written warning. Further, the final written warning contained fabricated, misleading, and false statements regarding Messer's work performance and conduct that was never substantiated by any investigation. For example, the final written warning indicated that Schuberth instructed Messer to take a vacation day on April 4, 2022, which is untrue. The final written warning also contained allegations that Messer left early on certain days without telling Schuberth. This statement is misleading because Schuberth never required any Store Managers, including Messer, to report when they were leaving early. In any event, on the days Messer allegedly left early, she delivered supplies to Starbucks' storage location, which is a requirement of her job duties and responsibilities.

47. Due to the final written warning, Messer is considered "not in good standing" in Starbucks' personnel system. Due to being "not in good standing," Messer is prohibited from receiving incentive-based bonuses, transferring to any other location, applying for professional growth opportunities, and receiving other employment benefits, including but not limited to Starbucks' "Career Coffee Break," which allows any employee with 10 years of employment up to one-year off while still receiving employment benefits, reinstatement rights, and seniority benefits.

48. On or about September 20, 2022, Messer's current District Manager informed her that she was not eligible to receive a raise in 2022 due to the final written warning issued by Ray. Prior to 2022, Messer received a raise every year she worked for Starbucks. Messer's District Manager also informed Messer that due to the final written warning she is not eligible to receive an annual bonus, which she also received every year of her employment.

49. In or about late January 2023, Messer applied for Starbucks' "Career Coffee Break." Messer's Regional Director for Los Angeles denied Messer's request because she was "not in good standing." Messer then emailed several employees above her Regional Director, attempting to get her "Career Coffee Break" approved. After several meetings with high level executives, where Messer explained the facts described above, Starbucks finally granted Messer's request for the "Career Coffee Break."

50. Messer's "Career Coffee Break" started on or about June 5, 2024 and Messer is supposed to return to work on or about March 24, 2024.

## COUNT I
**(Violation of Title VII – Hostile Work Environment based on Sex)**

51. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

12

Case 7:24-cv-00009-BO-RN   Document 1   Filed 01/09/24   Page 12 of 14

52. Defendant unlawfully discriminated against Plaintiff by creating a hostile work environment based on her sex, female.

53. Defendant's violation of Title VII was intentional, willful, and/or undertaken in reckless disregard for Plaintiff's rights under Title VII.

54. Plaintiff has suffered and continues to suffer damages as a result of Defendant's unlawful conduct.

## COUNT II
### (Violation of Title VII – Retaliation)

55. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

56. Plaintiff engaged in activity protected by Title VII in that she filed an ethics and compliance complaint regarding Schuberth's unlawful conduct.

57. Plaintiff had a reasonable, good faith belief that Schuberth's actions and statements violated Title VII.

58. Defendant retaliated against Plaintiff by providing her with a disciplinary action because she engaged in protected activity.

59. Defendant's violation of Title VII was intentional, willful, and/or undertaken in reckless disregard for Plaintiff's rights under Title VII.

60. Plaintiff has suffered and continues to suffer damages as a result of Defendant's unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief:

a) A Declaration and finding that Defendant willfully violated provisions of Title VII by creating a hostile work environment based on Plaintiff's sex;

13
Case 7:24-cv-00009-BO-RN    Document 1    Filed 01/09/24    Page 13 of 14

b) A Declaration and finding that Defendant willfully violated provisions of Title VII by retaliating against Plaintiff because she engaged in protected activity by filing an ethics and compliance complaint regarding Schuberth's unlawful conduct;

c) An Order awarding back pay, punitive and compensatory damages as well as front pay in lieu of reinstatement pursuant to Title VII;

d) An Order awarding the costs of this action;

e) An Order awarding reasonable attorneys' fees;

f) An Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law; and

g) An Order granting such other and further relief as may be necessary and appropriate.

Dated: January 9, 2024,

Respectfully submitted,

s/ Corey M. Stanton
Philip J. Gibbons, Jr., NCSB #50276
Corey M. Stanton, NCSB #56255
**GIBBONS LAW GROUP, PLLC**
14045 Ballantyne Corporate Place, Suite 325
Charlotte, North Carolina 28277
Telephone: (704) 612-0038
Facsimile: (704) 612-0038
E-Mail:  phil@gibbonslg.com
    corey@gibbonslg.com

*Attorneys for Plaintiff*